JUSTUS C. RAMSEY, Appellant, *vs.* CHARLES MERRIAM, *et al.* Respondents.

APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

In a mortgage foreclosure by advertisement, the amount claimed to be due at the date of the notice, should be the sum legally due, but a trifling excess in such amount, arising from mistake, and not of sufficient magnitude to deter bidders, will not vitiate the sale. Any amount within in the terms of the security may be claimed in the notice.    The case of *Spencer vs. Annan* 4 *M. R.*, 542, approved.

It is not essential to the validity of a notice of sale, in a foreclosure by advertisement, that it should be dated. When it is dated, the time so fixed will be taken as the true date. When nothing appears upon its face evidencing the date, the time of its first appearance, by publication, will be the date.

A mortgagee may become the purchaser, at a mortgage sale, of land, under a power that runs to himself, provided the sale is made in good faith, by the Sheriff, in accordance with the provisions of the Statute.

The Appellant commenced his action in the Court below, the nature of a bill in equity to set aside a sale of certain real estate which had been made by the Respondents, under a power of sale contained in a mortgage executed by the Appellant to the Respondent, Charles Merriam, and at which sale the respondent, Caldwell, officiated as Sheriff of Ramsey county, where the mortgaged premises were situated. The complaint also prayed an injunction prohibiting the respondent, Caldwell, from giving a Sheriff's deed of the premises to the Respondent, Merriam, who had purchased the premises at the sale. The complaint alleged certain irregularities in the sale, for which this relief was prayed.

The answer denied all allegations of irregularity, and then set up affirmatively, that after the Appellant had made the mortgage in question, but prior to the commencement of this action, the Appellant had, by certain deeds, granted and conveyed all his interest in the mortgaged premises to one Alexander Ramsey, his heirs and assigns forever, and that the said Appellant had not, at the time of commencing this action, and has not now, any right, title, inter-

est, estate, equity of redemption, or claim whatsoever, in or to the said lands or premises, or any part thereof.

The appellant, in his reply, admits he so conveyed as stated but alleges that the deeds were full covenant deeds, and that therefore, by reason of the said covenants, the Appellant had, at the commencement of this action, and now has " a right, title, interest, estate and equity of redemption in the said premises."

The case was referred to James Gilfillan, Esq., to hear and report a judgment.   On the trial before him, Defendants made a motion for judgment on the pleadings, which was granted, and judgment entered on the report of the referee.

The Plaintiff appeals to this Court.

Points and Authorities of Appellant.

I.—The complaint states a cause of action in this, to wit :

1st. It appears from the complaint that the debt was immature at the commencement of the foreclosure.

2d. It appears that the amount claimed in the notice of foreclosure, exceeded the amount already due. *Annon vs. Spencer*, 4 *Minn. R.*, 542; *Rev. Stat.*, *p.* 644, *sec.* 5.

3d. It appears that the notice of foreclosure was not dated as the statute prescribes. *Rev. Stat.*, *p.* 644, *sec.* 5.

4th. It appears that the sale was illegally postponed. *Rev. Stats. p.* 644.

5th. It appears that the power of sale in the mortgage run to the mortgagee, and the alleged sale under such powers was to the mortgagee, and is therefore null. *Hill. on Mort.*, *p.* 84, &c.; *Rev. Stats.*, *c.* 34, *sec.* 1, 2, 3; *Ib.*, *c.* 77, *sec.* 156, inclusive; *Stapp v. Talis*, 3 *Bibb.*, *Ky. Rep.*, *p.* 450, and cases; 6 *B. Monroe Ky. Rep.*, 608, and cases; 5 *Ib.*, 337, and cases; 4 *Com.*, 266.

II.—It appears from the pleadings that the Plaintiff, Ramsey, has such an interest in the event of the action as to make him a proper party Plaintiff.

Points and Authorities of Respondent.

I.—The Appellant having, before commencing this action,

parted with all interest in the mortgaged premises, has now no interest in the subject matter of the suit, and therefore cannot maintain this action.    *Story's Equity Pleadings*, *sec.* 232.

Nor has he any proper title to institute a suit concerning the subject matter of this action, though he may have a remote interest concerning it.    *Story's Equity Pleadings*, *secs.* 503-509; *Ibid, sec.* 197.

It is apparent, too, that the vendee, Alexander Ramsey, has a right to commence this action; and that he will not be bound by any judgment in this case.    He is the sole owner of the estate before owned by the Appellant.    What right has the Appellant to commence an action respecting his property ?

A bill to redeem, too, would have to be brought by Alexander Ramsey, and could not be brought by the Plaintiff alone, for he would have no right to redeem.    *Story's Equity Pleadings, sec.* 182, 187.

This action is, in fact, an action by Justus C. Ramsey, to determine the conflicting claims of Alexander Ramsey and Charles Merriam to a piece of land in which Justus C. has confessedly no interest whatever.

Again, did the covenants in the deed give the Plaintiff sufficient interest to maintain this action, it would not be competent for him to set it up in reply—his complaint being founded on a different cause.

On the points made by Appellant's counsel, supposing the interest sufficient, we have nothing to urge.    If they are well taken, they are matters of record, and afford no foundation for this action, though good grounds of defence.    *Cox vs. Clift.*, *2d Comstock*, 118, and cases cited.

II.—As to the first point, to wit, that the debt was immature at the commencement of the foreclosure, it was abandoned as not true in fact.

III.—As to the second, that the amount claimed to be due, exceeded that really due, we would say that *Annan v. Spencer* does not apply.

The amount claimed in the notice is the exact amount due on the face of the notes, and although the Plaintiff claims

that the notes should draw interest from a time subsequent to the terms of the note, yet the Defendant contests the claim, and has in good faith stated what he claims to be due. Therefore, *Spencer vs. Annan* has no application.

IV.—The Statute does not require the notice of foreclosure to be dated ; moreover the notice had upon it the date of the first publication, and as it only becomes a notice when published, it was thus really dated.

V.—The question of sale to the mortgagee is one of construction of the Statute, and intention of the Legislature. We think it plain from the Statute, that the mortgagee may always buy.

In *Jackson vs. Colden, 4th Cowen,* 266, such a sale was upheld. The mortgagee merely employed an auctioneer, to make the sale, bought himself, and brought ejectment. No deed was made to him, and on the trial it was objected that he had no deed. The Court overruled the objections, and the Plaintiff recovered, though there was no provision that where the mortgagee buys, no deed need be made. Our Statute has provided against the very difficulty that arose in that case, by enacting that in case of a purchase by the mortgagee, the affidavits shall be sufficient. It is clear that in that provision they intended to obviate the technical difficulty of a man's deeding to himself. *Comp. Stat.,* 646, *sec.* 19.

VI.—Should the Court hold the point as to the amount claimed to be due, not well taken, all the other points are apparent on the record, and, whether good or bad, will not sustain this bill.

BRISBIN & MASTERSON, Counsel for Appellant.

ALLIS & PECKHAM, Counsel for Respondent.

*By the Court*—FLANDRAU, J.—The object of this action is to set aside the sale made under the mortgage, for several reasons.

1st. That too much is claimed in the notice to be due.

2d. That the notice has no date.

3d. That the postponment of the sale was irregular.

4th. That the power of sale contained in the mortgage running to the mortgagee, he could not become the purchaser of the land under the power.

The answer sets out a state of facts showing that the amount claimed was not excessive ; alleges the regularity of the postponement, and shows the sale to have been made by the Sheriff of the County. It also alleges that the Plaintiff had, previous to the commencement of the action, conveyed to one Alexander Ramsey the lands mentioned in the mortgage, and all his " right, title, interest and estate, and equity of redemption" in them, claiming that he had no interest after such sale which would entitle him to maintain this action.

The reply reiterates the charges in the complaint as to the excess claimed ; also those as to the regularity of the postponement ; and as to the sale of his interest in the lands he admits it, but avers that the deeds contained covenants that he was well seized in fee of the lands, and had good right to convey the same, against incumbrances, and for quiet enjoyment, etc.

Judgment was given for the Defendant upon the pleadings.

The mortgage was given to secure three promissory notes, one for $15,000.00, and two for $1,350.00, each, all dated on the 29th day of May, 1858. The note for $15,000.00 was for the principal sum loaned, and was to run one year ; the other two were for the interest and were made payable in six and twelve months ; none of the notes drew interest, but all contained a stipulation that if not paid at maturity, they should draw interest at the rate of three per cent. per month.

The note falling due in six months was paid. The other two were not paid. They matured on the first day of June, 1859. The mortgagee commenced his foreclosure on the 7th day of July, 1859, one month and seven days after the due date of the notes. His notice claimed that there was due on the mortgage the sum of $16,870.00 at the date of the notice. If the mortgagee computed the interest from the due date of the notes at three per cent. per month until the commencement of the foreclosure, the sum would be $16,954.95, together with the exchange on New York which was stipulated for. If the computation was made at the rate of seven per

cent. per annum after the notes fell due, the sum would be $16,467.62, and exchange. The Plaintiff insists that there was but the sum of $16,385.00 due, which sum he probably arrives at by deducting all interest during the period from the date of the notes until he actually received the money from Merriam, and computing the interest after their maturity at seven per cent. per annum.

The Plaintiff relies upon the case of *Annan vs. Spencer*, 4 *M. R.*, 542, to sustain him upon this point. In that case the amount due upon the note was $964.62, and the amount claimed in the notice was $1,606.60. We set aside the sale on the ground that such a false claim would necessarily have the effect of deterring bidders, and was a fraud upon the mortgagor. It was however on account of the greatness of the excess claimed, it being about sixty-five per cent. more than the note called for. In the opinion delivered by the Court in that case this qualifying language occurs.

" We do not hold that it is absolutely necessary to state the exact amount legally due; for a party under a mistake of law or fact, may honestly claim more than by law he would be entitled to, and if any other party is not shown to be prejudiced thereby, the sale should not be disturbed. The mortgagee may be ignorant of, or contest certain alleged payments. He may estimate the amount according to the strict terms of the contract, or may err simply in a computation of the interest; and if under such circumstances he claims more than he could legally recover, it does not necessarily vitiate the sale. Perhaps any amount within the terms of the contract may in good faith be claimed without affecting the legality of the notice. But we do hold that a party cannot arbitrarily or wantonly claim in his notice a sum which neither the terms of the contract, nor any legitimate calculation based thereon will justify."

In this case according to the strict terms of the notes, a greater sum could have been claimed than was demanded, and in no aspect of the case was the excess when compared with the sum actually due, of sufficient magnitude to have influenced purchasers one way or the other. It is our opinion therefore that the sale should not be disturbed for this reason.

There are other and more appropriate means of redress where a mortgagor is injured by such a transaction. *Bidwell vs. Whitney*, 4 *M. R.*, 89.

The statute (*Comp. Stat.*, *p.* 644, §5,) does not require the notice of foreclosure to be dated. The only part of the section from which such a requirement can be inferred, is the third subdivision, which declares that the notice shall specify "the amount claimed to be due thereon at the date of the notice." The date of a notice does not mean exclusively the note appended to it stating its date, which although is properly called the date, is, strictly speaking, the evidence of it. It is also the actual time of its issuance whether expressed or not. Therefore the mere omission to inscribe the date upon the notice can in no way effect its validity, so long as the amount claimed is correct at the true date. The counsel for the Defendant claims that the true date of the notice is the time of its first appearance by publication, because before that time it is not a notice at all, but simply a silent writing, which may, or may not become a notice accordingly as it is published or suppressed. Our view is, that when the mortgagee writes the date upon the face of the notice, that fact will control, and the amount claimed must correspond with the time so stated; but when no evidence of the date appears upon the face of the notice, the time of its first publication is its date. This rule by removing all doubt concerning the date, practically satisfies the demands of the statute.

It is a sufficient answer to the charge that the postponment was irregular, that the complaint does not state any facts showing it to be irregular. The averment in the complaint is simply that the sale did not take place at the time specified in the notice, and that no postponment of the sale was ever duly given. No fact is alleged upon which issue can be taken.

The power under which the land was sold, was contained in the mortgage, and ran to the mortgagee. It is contended that under such a power the mortgagee could not become the purchaser. The validity of such powers was for a long time doubted even, where they did not run to the mortgagee ; but it is believed that all such doubts are now removed, and the practice of inserting such powers in mortgages has become

very general, and was authorized in many of the States and in England long before the adoption of the statutes of Minnesota in 1851 ; 1 *Hilliard on Mortgages*, 118 *to* 128, 1st *Ed.* A mortgagee, with a power to sell the estate on default being made in the condition of the mortgage, stands in the relation of a trustee of the mortgagor's rights, and in the absence of statutory authority would not be permitted to become himself a purchaser of the estate, under the very familiar principle that a trustee is not allowed to purchase the property of his *cestui que trust.   Baldwin vs. Allison*, 4 *M. R.*, 25, 30, and cases there cited.  There can be very little doubt that the legislature has the power to change this rule in all, or in particular cases, and it is for us to determine whether they have done so in regard to powers of sale in mortgages where the power is vested in the mortgagee.

The statute of this State, (*Comp. Stats.*, 643, *Ch.* 75,) it is true, does not speak of a power of sale running to the mortgagee in terms, but generally of mortgages, that contain powers of sale (*Sec.* 1); and where it provides the time, place and manner of the sale (*Sec.* 6), it declares that the sale shall be made "by the person appointed for that purpose in the mortgage, or by the Sheriff."   Express power is conferred upon the mortgagee to become the purchaser at a sale made under this statute (*Sec.* 9), and the legal difficulty which would arise in the case of the mortgagee conveying to himself, is obviated by *Section* 19, which provides that in such cases the affidavit, &c., shall have the same effect as a deed from the mortgagee upon a sale to a third person.   If the power to sell was made to the sheriff or any third person, and should be executed by them in pursuance of the statute, no doubt could be raised of the right of the mortgagee to purchase at the sale, because the relationship of trustee and *cestui que trust* would not exist, and the statute expressly authorizes a purchase in such case by the mortgagee.  Should the power run to the mortgagee, and the sale be made by him in person, an agent selected by him acting as auctioneer, it would be equally clear that he could not become the purchaser, because the characters of purchaser and seller are utterly incompatible in the same person at the same time.   We think the framers of the statute in

selecting the Sheriff, a responsible public officer to act, had in view the very case of the power being conferred upon the mortgagee, and designed to take from him the right to select his own agent to make the sale, when he wished to purchase, and thus to prevent any chance of collusion and undue advantage. The Sheriff cannot be said to be the agent of the mortgagee in making the sale, because the latter has no choice in his selection. He is chosen by the statute, and is the agent of the law as much as when he makes a sale on execution. The Sheriff being entirely indifferent, and acting under the obligation of his official oath and bond, there is no presumption of partiality one way or the other, and none of those elements that cast suspicion upon a purchase of trust property by a trustee. It would be doing violence to the intention of the legislature to suppose that they were only granting the privilege to purchase to the mortgagee, when the power to sell was vested in some other person, when the almost universal practice was the other way at the time of the passage of the act ; the intention to so restrict the right to purchase by the mortgagee, would at this day require very clear and satisfactory evidence before a court would be justified in disturbing half the titles in the State, as a decision of that character would have the effect of doing. We think everything tends to the opposite conclusion however, and so hold.

As we see no ground upon which to interfere with the sale, it becomes unnecessary to discuss the question as to whether the Plaintiff has any interest in the lands, upon which he can maintain this action.

The judgment is affirmed.