Atkinson v. Duffy

---

ABIGAIL A. ATKINSON & JAMES B. ATKINSON, her husband,

*vs.*

CHARLES DUFFY and wife.

Notice of foreclosure sale by advertisement is properly published according to the law in force at the time when the publication is made, notwithstanding the mortgage was executed prior to the passage of such law.

Under a notice of foreclosure sale, published seven weeks once in each week, the first publication occurring January 4th, 1867, and the last February 15th, 1867, a sale is not defective because made February 23d, 1867.

The subject of *Sec.* 3, *Ch.* 87, *Laws* 1860, is sufficiently expressed in the title of such chapter.

A mere agent is not a "personal representative" of a mortgagor, within the meaning of *Sec.* 5, *Ch.* 81, *Gen. Stat.*

Appeal from a judgment of the district court for Meeker county.

The complaint, alleging that the plaintiff Abigail A. Atkinson was the owner in fee of certain lands in Meeker county, which had been mortgaged by the defendants to one James A. Cook, and purchased by Mrs. Atkinson at a sale on foreclosure by advertisement of said mortgage, prayed that a sheriff's certificate of redemption, by the defendants, of the mortgaged lands, might be declared null and void, and that the plaintiffs' title to the lands might be affirmed.

The mortgage from the defendants to Cook bore date, and was executed and delivered, October 19th, 1860. It contained the usual power of sale, and was duly recorded. By an instrument bearing even date with the mortgage, and annexed to and recorded with it, the mortgagors waived all equity of redemption in the mortgaged lands.

On breach of the condition of the mortgage, Cook published a notice, in the form provided by statute, of foreclosure and sale. The notice referred to and recited the instrument of waiver, and stated that the sale would be absolute; and would take place February 23d, 1867. The notice was published once a week in the Saint Paul Pioneer, a newspaper printed and published at the capital of the state, the first publication being on the 4th of January, 1867, and the last on the 15th of February, 1867.

At the time of the foreclosure proceedings, the mortgagors had been for some time absent from the county, and were residing in Dubuque county, in the state of Iowa. One Flynn acted as their general agent in Meeker county, but was not in charge of the lands in question, which were unoccupied.

The sale took place pursuant to the published notice, Mrs. Atkinson becoming the purchaser, to whom, on the 6th of

March, the sheriff executed his certificate of sale, which was recorded on the 14th of March.

A verbal understanding between Flynn and J. B. Atkinson at the time of the sale, and an offer of terms of redemption by J. B. Atkinson to the defendants soon after the sale, which offer was not accepted, are noticed in the opinion.

March 22d, 1867, the sheriff paid over to the defendants the surplus money arising from the sale.

January 14th, 1868 the defendants, seeking to redeem the lands from the foreclosure sale, paid to the sheriff of Meeker county the amount claimed by them to be then due upon the mortgage, and received from him his certificate of redemption, in the form provided by statute, which certificate was duly recorded.

The action was tried by the court without a jury, and judgment was ordered for the plaintiffs, for the relief demanded in the complaint.

From the judgment entered the defendants appeal.

The points raised by counsel are stated in the opinion.

A. C. Smith and W. P. Warner for Appellants.

Cornell & Bradley for Respondents.

*By the Court*,—Berry, J.—Inasmuch as the plaintiffs claim title through the foreclosure of a mortgage by advertisement, it would have been well to have alleged in the complaint that the mortgage contained the usual power of sale ; but as the mortgage, which was received in evidence without objection appearing, and is reported as an exhibit in the finding of the court, in fact contains a power of sale, the imperfection possesses no practical or substantial import-

ance. Besides, the existence of the power of sale is expressly admitted in the defendants' answer.

It was entirely proper to publish the notice of foreclosure sale in a St. Paul newspaper, as required by the statute in force at the time when the publication was made, viz., *sec. 5, chap. 81, Gen. Statutes.* The application of this statute to the foreclosure of a mortgage executed before its passage, does not impair any contract right, but affects the remedy only. *See Lowell vs. North & Carli,* 4 *Minn.,* 32.

The notice (which was required to be published for six successive weeks, once in each week,) was published seven times, the first publication occurring on the 4th day of January, 1867, and the last on the 15th day of February, 1867, the sale taking place on the 23rd day of February, 1867, as appointed in the advertisement. It is argued that the sale should have taken place at the expiration of the six weeks, to wit, on the 15th day of February, and that as eight days elapsed after February 15th, before the sale on February 23d, the sale is bad. The statutes (*secs. 5 & 6, ch. 81, General Statutes, and secs. 68 and 69 ch. 66, General Statutes,*) make no express provision in regard to the time at which a sale of this kind should be made ; and if, in the absence of such provision, the interval between a publication and a sale might be so unreasonably long as to thwart the purpose of the statute, we are clear that no such state of facts is presented by this case. Even if eight days had elapsed between the publication and the sale, as is claimed by the defendants, we should be of this opinion; but the fact is, that the last publication continued until the 22d day of February, the expiration of the publication week, and the sale took place on the next day. This, to be sure, would give a seven weeks' publication, but it is difficult to see

why a mortgagor should object that he had *more* notice than the law required.

The mortgage in question was accompanied by an instrument waiving all right of redemption after sale. It is said, on behalf of the defendants, that the subject of *sec.* 3, *ch.* 87, *Laws* 1860, under which the waiver was made, is not expressed in the title of the act. A former section of the chapter allows the mortgagor three years within which to redeem from a sale, and section 3 provides that this right of redemption may be waived. The act is entitled "An act to regulate the foreclosure of real estate," and we think this title sufficient to cover section 3 within the liberal rules which it is indispensable to apply in the construction of the constitutional provision on this subject. *See Stuart vs. Kinsella*, 14 *Minn.*, 524. As the regulation of the right of redemption, and of the right to waive redemption, to a certain extent gives character to and determines the effect of the sale, it is no great stretch of language to speak of the rules prescribed in regard to them as regulating the foreclosure.

It is further urged, that the notice of sale should have been served on Flynn, who seems to have been a sort of agent for the mortgagors, the defendants claiming that an agent is a "personal representative," in the meaning of *sec.* 5, *ch.* 81, *General Statutes*. The language of the statute, requiring notice (when publication is made out of the county), to be served upon "the mortgagor, his heirs or personal representatives," indicates pretty clearly that the term "personal representatives" was used in its ordinary meaning of executor or administrator, and not in the sense contended for. *Bouvier's Law Dic.*, *Title Representative ; Anderson vs. Austin*, 34 *Barb.* 321 ; *Boutillier, Administrator, vs. Steamboat Milwaukee*, 8 *Minn.*, 97.

Atkinson v. Duffy.

Some objections are made to the sheriff's certificate of sale and the record thereof. As the defendants have not seen fit to insert the certificate in their paper book, although it is referred to as an exhibit in the finding, we presume the objections to it are not much insisted on. It appears to have been recorded within twenty days after the sale, and as there is no "case-made," we are not in a position to consider the point made as to the incompetency of the subscribing witnesses.

The court finds that at the time of the sale there was a verbal understanding between J. B. Atkinson, one of the plaintiffs, and husband of Abigail A. Atkinson, his co-plaintiff and purchaser at the sale, and Flynn, who appears to have assumed to act for defendants without special instructions or funds furnished,—that he, Atkinson, should bid off the property and permit defendants to redeem on *fair terms*. This understanding was so loose and indefinite that, taking it in connection with defendants' declared intention not to "bother any more about" the land, and their acceptance of the surplus money from the sheriff, and their refusal to redeem upon the terms offered by plaintiffs, we are of opinion that the court below was justified in holding that the sale became absolute, and that the subsequent attempted redemption was ineffectual.

Judgment affirmed.